KELLEY, Plaintiff in Error, v. LAWRENCE et al.

Division Two, March 29, 1906.

1. **NEGLIGENCE: Master and Servant: Appliances: Undesigned Use.** The master is not liable for the negligent and careless use by the employee of appliances provided for him, or for injuries caused by the use of such appliances for a purpose for which they were not intended or designed.

2. ———: ———: ———: ———: **Viaduct Over Alley: Sitting On Banister.** Defendants were the owners and lessees of a double-store building separated by an alley sixteen feet wide between the stores. Between the stores, on a level with the second floor or upper story, ran a bridge or viaduct, four feet

wide, and guarded on each side by a railing or banister made of pieces of lumber two by four inches. Plaintiff, in the employ of the lessees as a salesman, crossed over the bridge from the main store, to the floor or room at the other end of the bridge, where were kept buggies, for the purpose of showing and selling a buggy to a customer. Having shown him the buggy, but not having effected a trade, he came out on the passage way with the customer, and lingered there in talk about the trade, and sat down upon or undertook to sit down upon the railing. It gave way, he was precipitated to the rock road beneath and was injured. *Held*, that the railing was not designed to sit upon, and plaintiff's injuries were due to his own carelessness and negligence, and he cannot recover.

Error to Daviess Circuit Court.—*Hon. J. W. Alexander*, Judge.

Affirmed.

*C. W. Bolster* and *Harber & Knight* for plaintiff in error.

(1) Regardless of what may be said as to the liability of Crain, there is no reason why the rule that "the master is bound to take ordinary and reasonable care not to subject his servant to unreasonable, extraordinary dangers by sending him to work in dangerous buildings, or dangerous premises, or with dangerous tools, machinery or appliances, and if failing in his duty in any of the respects mentioned and the servant in consequence thereof is injured, the master is liable therefor," should not apply to the employers of plaintiff, Lawrence and Enyeart. It was their duty, of course, to exercise reasonable care to see that the premises upon which they required plaintiff to work on or about, i. e., the crossing or viaduct, was in a condition of reasonable safety for such use and work. Muirhead v. Railroad, 103 Mo. 251; Gutridge v. Railroad, 105 Mo. 520; Henry v. Railroad, 109 Mo. 488; Rutledge v. Railroad, 119 Mo. 312, 123 Mo. 121; Gorham v. Railroad,

113 Mo. 408; Minnier v. Railroad, 167 Mo. 99; Zellars v. Railroad, 92 Mo. App. 107; Weldon v. Railroad, 93 Mo. App. 668; Steinhauser v. Sproul, 114 Mo. 557. This duty was an imperative and continuous one. Rodney v. Railroad, 127 Mo. 676; Suttle v. Railroad, 127 Mo. 336; Gorham v. Railroad, 113 Mo. 408. (2) It was not the duty of plaintiff to seek for any defects in the viaduct, but having no knowledge to the contrary, he had the right to assume that defendants had discharged the duty the law exacted of them towards him for his protection. Turner v. Drake, 71 Mo. 286; Reber v. Tower, 11 Mo. App. 199; Porter v. Railroad, 71 Mo. 66. (3) There is no evidence to in any wise warrant the taking of it from the jury by reason of any contributory negligence or assumption of risk upon the part of plaintiff. Hurst v. Railroad, 163 Mo. 309; Thompson v. Railroad, 86 Mo. App. 141; Herbert v. Shoe Co., 90 Mo. App. 305; Pauck v. Dressed Beef & P. Co., 159 Mo. 467, 166 Mo. 639; Zellars v. Light Company, 92 Mo. App. 107. (4) The viaduct being erected as it was over a public alley of the city, and no authority being shown therefor, and the burden of showing such authority, if any there was, being upon defendants, and said viaduct having been erected by Crain prior to tenancy of his co-defendants, he is also liable with the other defendants. Pope v. Boyle, 98 Mo. 52.

*Boyd Dudley* for defendants in error.

(1) The master is not liable for a servant's unauthorized use of a tool, appliance or place, which are safe and suitable for the purposes intended, but which we used by the servant for some purpose of use for which they were not intended and the servant is injured thereby. Moran v. Brown, 27 Mo. App. 490; The Persian Monarch, 5 C. C. A. 117, 14 U. S. App. 158, 49 Fed. 669; Butterworth v. Clarkson, 22 N. Y. Supp. 714; Ryerson v. Bathgate, 2 Am. Neg. Rep. 300; 20 Am.

and Eng. Ency. Law (2 Ed.), 78, 141; York v. Railroad, 117 Mo. 405. The viaduct had been used for years without accident by persons for the purpose for which it was intended. The plaintiff had been in the wareroom with his customer, in a safe place, had just come out of the wareroom door, and voluntarily left a safe place, either on the wareroom floor or viaduct floor, to sit down on a weak rail. His daily use and constant observation, as shown by his own evidence, was bound to bring home to him a conviction that it was not strong enough to support his weight. He left a safe place to sit down on a frail banister that he knew was not intended to sit on, and he was not required to sit on, and that his employers did not want him to sit on, and having voluntarily left a safe place for one of danger, without thought, careless of his own safety, and negligent of the danger, he cannot recover. (2) The demurrer was properly sustained, because, where the plaintiff's own evidence establishes contributory negligence, there is no disputed fact for the jury to pass upon, and the plaintiff should be nonsuited, or the jury directed to return a verdict for the defendant. Roberts v. Tel. Co., 166 Mo. 370; Hudson v. Railroad, 101 Mo. 13; Milburn v. Railroad, 86 Mo. 104; Schlereth v. Railroad, 96 Mo. 509; Stone v. Hunt, 94 Mo. 475; Buesching v. Gas Co., 73 Mo. 219. (3) In the absence of a covenant, the landlord is under no obligation to repair the premises during the course of the tenancy. Nor is he liable to the tenant for injuries resulting to him from failure to repair. In the absence of contractual obligations, the landlord, as to his tenant, is only liable for acts of misfeasance and not of nonfeasance. Roberts v. Cottey, 100 Mo. App. 503; Whiteley v. McLaughlin, 183 Mo. 160; Rogan v. Dockery, 23 Mo. App. 313. The same rule applies to a member of the tenant's family or his employees. Whiteley v. McLaughlin, 183 Mo. 160; 18 Am. and Eng. Ency. Law (2 Ed.), 238; O'Brien v. Capwell, 59 Barb. (N. Y.) 497; Jaffe v.

Hartman, 56 N. Y. 401; Quay v. Lucas, 25 Mo. App. 4. As a general rule, the landlord is not liable for injuries to third persons during the tenancy, from the defective repair of the demised premises. 18 Am. and Eng. Ency. Law (2 Ed.), 238; Quay v. Lucas, 25 Mo. App. 4; Ward v. Fagan, 28 Mo. App. 116; Mayer v. Schrumpf, 85 S. W. 915; Roberts v. Cottey, 100 Mo. App. 500; Peterson v. Smart, 70 Mo. 34. Where, at the time of the letting, the premises are in a proper state of repair, and they are permitted by the tenant to get into a condition dangerous to the public or third persons, the landlord is not, as a general rule, liable to third persons for injuries caused therefrom during the tenancy. Deutsch v. Abeles, 15 Mo. App. 398; Pope v. Boyle, 98 Mo. 527; Stoetzele v. Swearingen, 90 Mo. App. 588. Unless there is an express covenant on the part of the landlord to repair, he is not bound to keep the premises in repair. Vai v. Weld, 17 Mo. 232; Morse v. Maddox, 17 Mo. 574; Burnes v. Fuchs, 28 Mo. App. 279; Ward v. Fagan, 101 Mo. 669; Gordon v. Peltzer, 56 Mo. App. 602; O'Brien v. Capwell, 59 Barb. 497; Roberts v. Cottey, 100 Mo. App. 500; Rogan v. Dockery, 23 Mo. App. 313; Mayer v. Schrumpf, 85 S. W. 915.

FOX, J.—This cause is here upon a writ of error sued out by the plaintiff for the purpose of having the judgment and proceedings of the Daviess Circuit Court, in the above cause, reviewed by this court.

This is an action for personal injuries, and is predicated upon substantially the following state of facts:

On the 22d day of March, A. D. 1900, and prior thereto, defendants M. W. Lawrence and John J. Enyeart were engaged in the sale of hardware, implements, buggies, etc., at Gallatin, Daviess county, Missouri. The hardware was kept in the first floor of the building on the east side of the square, and the buggies, after being uncrated and ready for sale, were kept in the second story of the building across the alley some

sixteen feet from the the main store building. This room was known and used as the buggy salesroom. In the lower part of this last-mentioned building were kept implements of various kinds. The entrance to the salesroom was had by porch and steps at the east end of the hardware-room, connecting with a viaduct and this viaduct extending from said storeroom building to the salesroom, across the sixteen foot alley before mentioned. This viaduct or passageway was built and used for a passage or walkway from said main store building to the buggy-room for the purpose of employees of said defendants engaged in the showing and selling of the buggies to make use thereof in passing to and fro with customers. It had been erected as early as 1898, during the occupancy of a Mr. Pierce, and was built by the use of three stringers or sleepers running across the alley from the stairway to the building in which the buggies were situated, a floor about four feet in width of pine lumber being placed upon these sleepers, and a railing or banister of two by four pine lumber about two and one-half feet high being placed on either side thereof. It was not fastened at the stairway. It had been nailed to an upright piece on the implement building, and was fastened in the middle by being nailed to an upright piece running from said sleepers. It was about sixteen feet from this viaduct to the surface of the alley below. This alley had been macadamized, at least a large amount of rock had been placed therein prior to the date of plaintiff's injury. The buildings and viaduct before mentioned were the property of defendant Thomas Crain, and leased by him to the defendants Lawrence and Enyeart. On the 22nd day of March, 1900, the two last-named defendants employed the plaintiff as general salesman for hardware, implements and buggies. Plaintiff continued in said defendant's employ until the 16th day of July, 1900, at which time he went with Mr. Cyrus Musselman from the general salesroom to the

buggy-room, by means of the viaduct before mentioned, for the purpose of showing, and if possible selling to Mr. Musselman a buggy.    After examining the buggies, remaining in the buggy-room from ten to twenty minutes in so doing, Mr. Musselman proposed exchanging his old buggy for one shown him by plaintiff. Mr. Musselman and plaintiff started to leave the buggy-room by means of the viaduct; upon reaching the viaduct plaintiff halted, and while discussing the buggy deal with Mr. Musselman, started to sit down, or did sit down, he is not positive which, upon the railing on the south side of this viaduct, and while making use of the viaduct in that manner, the railing or banister gave away, plaintiff and railing or banister falling from said viaduct to the surface of the alley below, by reason of which fall he was injured.

The negligence complained of is thus stated in the petition: "That on the 16th day of June, 1900, defendant Thomas Crain was the owner of the buildings occupied by said defendants Lawrence and Enyeart in conducting their said business, and was for a long time prior and a long time after said date the owner thereof, and the landlord and lessor of said firm for the said purpose of conducting said business.

"That it was the duty of said Crain as said land-lord and lessor, and the defendants Lawrence and Enyeart as well, to put the said premises and keep the same in reasonably safe condition for the purpose and use for which they were let to and used by said defendants Lawrence and Enyeart, their agents and servants.

"That the buildings occupied and used by said last-named defendants Lawrence and Enyeart, in conducting their said business, consisted of two two-story buildings with a stone-paved alley or passageway between the same. That the upper stories of the said two buildings were used by said defendants as storage and sales-rooms in and about their said business, and connection

195 Sup.—6

was had and passage was made from one to the other of said upper-story rooms of said buildings by means of a wooden viaduct, bridge, or passageway placed there for that purpose and so maintained and used by said defendants as owner and lessor and users and tenants as aforesaid.

"That it was the duty of said defendants Lawrence and Enyeart, and of said Crain as well, to see that said viaduct, bridge, or passageway was in a reasonably safe condition, for which, as they and each of them well knew, it was to be, and was so used, and keep the same in such reasonably safe condition for such use.

"The plaintiff was in the month —————, 1900, and a short time prior to the 16th day of June, 1900, employed by defendants Lawrence and Enyeart, as clerk and salesman in and about their said business and entered upon the discharge thereof.

"That on the said 16th day of June, 1900, the said viaduct, bridge or passageway was in a rotten, unsafe and dangerous condition for use for the purpose for which it was let and used, which rotten, unsafe and dangerous condition all of said defendants well knew, or by the exercise of reasonable diligence might and would have known. . . . That the part thereof which by reason of its said condition gave way and caused plaintiff's fall  as aforesaid, was the guard-rail or banister and rotten parts thereon unknown to plaintiff, all of which were rotten, insecurely fastened and unsafe."

To this charge of negligence the defendants filed the following answer:

"Come now defendants and for their amended answer to plaintiff's petition herein deny each and every allegation therein contained.

"Further answering, defendants say that plaintiff's injuries, if he was injured, were caused by the breaking of a certain guide-rail, built of light two-by-four-inch pine stuff, the purpose thereof being to mark the sides of a certain bridge or viaduct constructed

across the alley, and connecting the store or salesroom in which defendants Lawrence and Enyeart were doing business and the wareroom in which their surplus stock was stored; that said bridge or viaduct was built solely as a passageway between said storeroom and wareroom; that said guide-rail was not built to sit on or lean against, but was built and solely intended as a guide-rail to mark the sides of said bridge or viaduct to prevent persons thereon from walking thereoff; that plaintiff had been employed for a long time, to-wit, about six months, by said defendants Lawrence and Enyeart; that during all that time he had worked in and about said premises and well knew that said guide-rail was built solely for the purpose of preventing persons on said bridge or viaduct from walking thereoff, and solely to mark the sides thereof, and well knew that said guide-rail was not built or intended as a seat to sit upon, or to bear weight; that said plaintiff had daily opportunity to see and observe said guide-rail; that he knew or by the use of ordinary care might have known the condition thereof; and that the defects therein, if any, were fully apparent to him; that his opportunity for knowing the condition thereof was equal to that of defendants, and that at the time of the injury, if any, plaintiff was sitting and bearing his weight on said rail, well knowing at the time that it was not con-structed for or intended for that purpose.

"And for further answer defendants say that plaintiff's injuries, if any he received, were due to and caused by plaintiff's own negligence, carelessness and want of due care contributing thereto.

"And having fully answered, defendants ask to go hence with their costs in this behalf laid out and expended."

It is unnecessary to give a detailed statement of the testimony. It will suffice in order to dispose of the legal propositions presented, to say that the testimony

of plaintiff tended to establish the facts as heretofore indicated, upon which this action was predicated.

It is conceded by plaintiff in error that the plaintiff testified in this cause substantially as follows, as to this accident: He said: "In standing there talking to Mr. Musselman about the buggies I backed up against the banister and I started to sit down and may have got down, . . . still talking, you understand, not thinking that I was going, and over it went. I went over backwards into the alley. . . . I could not say positively that I sat on the railing. I know I started to sit down and may have gotten my weight on the railing. I was talking to Mr. Musselman about the buggy deal and was not thinking of anything else. . . . I never looked to see whether the banister was cracked or split. If I had taken the pains to have examined it, I could have seen, but I never thought about doing it. . . . I don't absolutely know whether I sat down on the banister or not. Know I started to and that it broke. . . . . I know I started to sit down and might have gotten my weight on the banister. Would not swear that I did not. . . . . About selling that buggy was what I had in my mind. . . . There was nothing hidden about it that I could not have seen if I had wanted to examine it. But I did not do it. Supposed that the place was safe. It was not absolutely necessary for me to sit down there in discharging my duties. It is true that they were not paying me a salary to go out there and sit on that railing. I did not know anything about whether it was put there to sit on. Of course, it was not put there for a seat. Did not think about that. Was not discussing in my mind as to whether this thing was put there to sit on or not to sit on. The fact is that it was there and I backed up against it to sit down on it, just like any other man would have done under the same circumstances. I know and you know that any other man would have done just as I did under the same circumstances. . . . Nobody directed me to sit

down.. I did not direct myself. . . . I just simply backed up against it like that, and it struck me along here, and I was talking buggy. And I may have got down, I don't say that I did or did not, and I went down.''

At the close of plaintiff's evidence the court sustained a demurrer to the evidence, as requested by defendants, and instructed the jury that plaintiff was not entitled to recover. Plaintiff took a nonsuit, with leave to move to set the same aside, and judgment was rendered in favor of defendants.

Plaintiff in proper time filed his motion to set aside the judgment of nonsuit and for a new trial, which motion was by the court overruled.

Upon the judgment as heretofore indicated plaintiff sued out of this court a writ of error, and the cause is now before us for consideration.

## OPINION.

The record in this case presents for our consideration but one legal proposition, and that is in respect to the action of the court in sustaining the demurrer to the evidence interposed by defendants at the close of plaintiff's case.

Plaintiff in this action seeks to recover damages for personal injuries received while in the employ of defendants by the use of a viaduct provided by defendants in the transaction of their business. This viaduct or passageway was used by defendants for a passage or walkway from their main store building to the buggy-room; it was built across an alley or open space about sixteen feet and was used by the employees of the defendants in going to and from the main building to the room in which buggies were kept in showing and selling to customers buggies located in that room. It was erected in 1898 during the occupancy of the premises by a Mr. Pierce; it was built by the use of three

stringers or sleepers running across the alley to the storeroom or building in which the buggies were situated. The floor of this viaduct was about four feet in width, being made of pine lumber placed upon these sleepers or stringers, and there was placed on either side of the viaduct a railing or banister, made of two-by-four pine lumber and this banister or railing was about two feet and a half high. Plaintiff, on the day that he was injured, went with Mr. Musselman from the salesroom to the buggy-room over this viaduct for the purpose of showing and selling him a buggy; they were in the buggy-room a short time and started to leave it, returning by way of the viaduct. Upon reaching the viaduct, plaintiff still talking to Mr. Musselman about the buggies, undertook to sit down or at least started to sit down upon the banister or railing on one of the sides of the viaduct; the banister or railing not being sufficient to support his weight, gave way, and he received injuries of which he is complaining in the petition filed in this cause. Upon this state of facts we are simply confronted with the question as to whether the trial court properly or improperly sustained the demurrer to the evidence interposed in this cause.

We have carefully considered the disclosures of the record before us and have read in detail all of the testimony developed at the trial, and we are unable to conceive upon what theory plaintiff can maintain this action, and have reached the conclusion that the court very properly sustained the demurrer to the evidence. It will be observed that in the statement of the cause in the petition the plaintiff alleges that this viaduct was rotten and unsafe, and by reason of the negligence of defendants in failing to keep it in proper repair the plaintiff received the injuries complained of; but when we reach the testimony upon which the plaintiff seeks a recovery, the record is absolutely silent as to any defect in the viaduct which caused his injuries, except the defect in the banister or railing. It is not pretended

in this case that the injuries complained of resulted from any defective, rotten or unsafe condition of the part of this viaduct upon which plaintiff had to walk in order to reach the buggy-room or in returning from it, but it is earnestly urged that he is entitled to recover by reason of the defective condition of the banister or railing which gave way, under the circumstances detailed by him in his testimony.

There is no dispute as to the rules of law applicable to the relation of master and servant. The law upon that subject is firmly established by the uniform and unbroken line of decisions in this State. That it is the duty of the master to use reasonable care and prudence for the safety of those in his service in providing them with machinery and appliances reasonably safe and suitable for their use, and that the master will be held liable for any injury from any accident that may happen through any defect in the machinery or appliances provided by him for the use of his servant, which was or ought to have been known to him, no one will seriously question. On the other hand, it is equally well settled that the master is not liable for the negligent and careless use of appliances provided for him by the master, or in using such appliances in a manner or for a purpose for which they were not intended or designed.

Applying these well-settled rules of law to the conceded facts in this case, there is no escape from the conclusion that whatever injuries plaintiff received were the result or his own carelessness and negligence in the use of a part of an appliance provided for him by the defendants.

The floor of this viaduct was four feet wide, and it was such floor that was designed as the passageway or walkway for the use of employees in going to the buggy-room or returning therefrom, and so long as plaintiff was walking upon this floorway or standing upon it he was entirely safe, and it was not until he un-

dertook to improperly use the banister or railing which
was placed on either side of this walk, for a purpose
for which such banister or railing was not intended or
designed, that he was in any danger of being injured.
That this railing or banister on either side of this
viaduct was not placed there to be used as a seat or
resting place for employees in using such viaduct, is
too plain for discussion. No one will seriously contend
that, in the placing of that railing or banister on either
side of the viaduct, it was designed for any other
purpose than simply a guardrail and to prevent those
who should use the viaduct in an ordinarily careful
manner from being hurt. That plaintiff knew that this
railing or banister was not intended for the purpose of
a seat or resting place by persons going backward and
forward over the viaduct is not disputed, for he says
in his testimony, in speaking of this railing or banister,
"Of course it was not put there for a seat." It being
conceded by plaintiff that this railing or banister was
not placed on either side of this viaduct to be used as a
seat, it must be held that if he undertook to use it for
a seat and sat down upon it, or attempted to sit down
upon it, he did so at his own risk, and any injuries re-
ceived by him by reason of such improper and careless
use of such railing or banister cannot be made the basis
of a complaint that such injuries were the result of the
negligence of his employers.

In order to maintain this action the negligence of
the defendants must be the proximate cause of the in-
jury, and when we look to the evidence as to what was
the proximate cause of this injury, there is but one an-
swer, and that is the improper, careless and negligent
use of a railing or banister by the plaintiff for a pur-
pose not intended or designed in the erection of such
railing or banister.

In York v. Railroad, 117 Mo. 405, it was ruled by
this court that the plaintiff was not entitled to recover
for injuries received in the use of a push-car in a man-

ner and for a purpose for which the car was not intended or designed, and this court, in announcing its conclusion in that case, said: "The death of deceased was not caused by any defect or deficiency in the car affecting its safety when used in the usual manner and for the purposes for which it was designed, and there was no negligence on the part of the defendant in ordering its use." So it may be said in the case at bar, that the injuries received by plaintiff were not caused by any defect or deficiency in the viaduct affecting its safety when used in the usual manner and for the purpose for which it was designed, but such injuries, as is clearly disclosed by the testimony of the plaintiff, were received by reason of the improper and careless use of a banister or railing on the side of the viaduct for a purpose for which such banister or railing was neither intended nor designed.

In Sindlinger v. Kansas City, 126 Mo. 315, plaintiff sought a recovery from the defendant city for injuries received by reason of a defective railing or banister on a viaduct in one of the streets of said city. GANTT, J., speaking for this court, in that case, very clearly indicated the views of this court as to the purposes of a railing or banister on the side of a viaduct. He said: "The railing was put there as a warning of the danger and to prevent those who should use the viaduct in an ordinarily careful manner from being hurt. It will be remembered that the way was constructed solely for pedestrians. It was not to be supposed that grown-up men would expect to propel themselves against it in running races, and of course was not constructed with such a view. But that it was entirely sufficient for the purpose for which it was erected we think clearly appears, not only from the plaintiff's evidence, but was abundantly established by that of defendant." So it may be said in the case at bar, that in the placing of this railing or banister on the sides of this viaduct it was not to be supposed that employees or any other person

using it, would expect to use such railing or banister as a place to sit upon and rest, for it was certainly apparent to any person of ordinary intelligence in using it that such railing or banister was not constructed for the purpose of furnishing a seat or resting place for anybody. Such railing or banister on the sides of the viaduct now under consideration was clearly placed there for no other purpose than a guard-rail or to mark the limits of that part of the viaduct within which persons might safely travel and to furnish a warning of the danger.

In Stickney v. City of Salem, 3 Allen 374, the Supreme Court of Massachusetts, in an opinion by Chief Justice BIGELOW, held that the city was not liable in damages to one who, while stopping in a highway for the purpose of conversation, leaned against a defective railing and was injured. He said: "The legal obligation of keeping a sufficient railing upon a highway is imposed only when it is necessary to mark the limits of the part of the road within which persons may safely travel, or to furnish a guard against dangerous places, so that proper protection may be afforded to those who, in the exercise of due care as travelers, while passing or standing on the way, might otherwise be exposed to accident or injury;" and a demurrer to the evidence was sustained.

We see no necessity for pursuing this subject further. The plaintiff in this cause, as disclosed by the evidence preserved in the record, was entirely familiar with the use of this viaduct; he used it frequently for a considerable length of time; he concedes that he knew that this railing or banister was not placed on the sides of the viaduct to be used as a seat or a resting place, and that it was not intended or designed for that purpose; hence the use of it by him in the manner disclosed by the evidence, which resulted in the injuries complained of, must be attributed to his own carelessness and negligence, and this being so, the defendants should

not be held liable for such injuries, and the court properly sustained the demurrer to the evidence interposed by defendants at the close of the plaintiff's case.

The judgment in this case should be affirmed, and it is so ordered.

All concur.