C. E. WINSCOTT, Respondent, v. CHICAGO &
ALTON RAILROAD COMPANY, Appellant.

**Kansas City Court of Appeals, November 7, 1910.**

1. **CARRIERS OF PASSENGERS: Station Platforms: Injury
   While Awaiting Train.** Plaintiff was waiting on the station
   platform to meet an incoming passenger. While lightly rest-
   ing his hands on the top board of the platform fence, which at
   that point was in a defective condition, it gave way, throwing
   plaintiff to the ground. *Held*, that defendant's demurrer to the
   evidence was properly overruled.

2. ———: ———: ———. Plaintiff was neither a tresspasser nor
   a mere licensee, but was rightfully on the platform. The de-
   fendant, therefore, owed plaintiff the duty of ordinary care to
   maintain its station buildings and platforms in a reasonably
   safe condition. Defendant was bound to anticipate that the
   platform would be used as a waiting place, and the fact that
   plaintiff failed to use the waiting rooms provided did not bar
   his recovery.

Appeal from Cole Circuit Court.—*Hon. William H.
Martin*, Judge.

AFFIRMED.

*W. S. Pope, Scarritt, Scarritt & Jones* and *C. M.
Miller* for appellant.

(1) The court erred in not instructing the jury
to return a verdict for appellant. Stickney v. Salem
(Mass.), 3 Allen 374; Orcutt v. Bridge Co., 53 Me.
500; Kinney v. Onsted, 113 Mich. 96, 71 N. W. 482;
Kelley v. Lawrence, 195 Mo. 75. (2) The court erred
in giving instructions on behalf of respondent. Rob-
ertson v. Railroad, 152 Mo. 382; Railroad v. Railroad,
118 Mo. 625; Zwisler v. Storts, 30 Mo. App. 163;
Fisher v. Lead Co., 156 Mo. 479; Casey v. Bridge Co.,
114 Mo. App. 47. (3) The court erred in refusing
instructions offered on behalf of appellant. See cases

under point 1. (4) The court admitted incompetent evidence. (5) The judgment is contrary to the law and the evidence.

*D. U. Herring, Harris & Hay* and *E. Silver* for respondent.

(1) It is the duty of a railroad company to keep its station platform, and all portions of the premises reasonably near such platforms, where persons rightfully using same would naturally and ordinarily go, in a reasonably safe condition. Railroad v. Robinson, 130 S. W. 536; Stafford v. Railroad, 22 Mo. App. 333; Wood v. Railroad, 181 Mo. 433; Waller v. Railroad, 59 Mo. App. 410; McDonald v. Railroad, 26 Iowa 124; Railroad v. Brown, 78 Tex. 397. (2) Respondent was not a trespasser or mere licensee, but having gone to the station to meet his son whom he was expecting to arrive on the incoming train, he was in the class of those for whom the appellant was under obligation to maintain its station platform in a reasonably safe condition. Doss v. Railroad, 59 Mo. 27; Langan v. Railroad, 72 Mo. 392; James v. Railroad, 107 Mo. 480; Railroad v. Best, 66 Tex. 116; Gillis v. Railroad, 59 Pa. 129; Burbank v. Railroad, 11 L. R. A. 720; Woods Railway Law, pp. 1334, 1335; 10 Am. and Eng. Ency. Law (2 Ed.), p. 163. (3) Respondent being thus rightfully on the platform it was for the jury to say whether, in the light of all the evidence and the common experience of mankind, the use he was making of it at the time of his injury was such as the company should have anticipated would naturally be made of it, and, therefore, reasonable. Herdt v. Koenig, 137 Mo. App. 589; McGinley v. Trust Co., 168 Mo. 257.

JOHNSON, J.—This is a suit for damages for personal injuries alleged to have been caused by the negligence of defendant, a railroad company, in not

maintaining the platform of its station at the town of New Bloomfield in proper repair. Plaintiff recovered judgment for eleven hundred dollars, and defendant appealed.

The railroad runs north and south through New Bloomfield and the station building and platform were on the east side of the main track. On account of the slope of the ground the east side of the platform north of the building was seven or eight feet high and rested on posts. The west side of the platform came close to the track and rested on the ground. A fence, or railing, beginning at the north end of the building was maintained along the east side of the platform. The part of this fence of present concern was that immediately north of the building. At that place the fence consisted of oak posts fastened to the edge of the platform and two horizontal pine boards each six inches wide and one inch thick nailed to the west side of the posts. The top board was three and one-half feet above the platform and the bottom board was midway between the top board and platform. The evidence of plaintiff tends to show that men and boys had sat on and leaned against the top board until its south end had torn loose from the post next to the building and near the middle post on both sides thereof the board had split so badly that while it retained its position and appeared sound at a casual glance, in reality, it was too weak to offer resistance to any kind of pressure or weight. There was a waiting room for passengers in the building but the part of the platform under consideration was near the place where passengers were received and discharged from passenger trains and in fair weather, it was used by persons who had business with such trains, as an "open air" waiting room. On a pleasant day in May, 1908, plaintiff, then sixty-two years old, went to the station a few minutes before train time to meet his son whom he expected to arrive on a regular passenger train.

While waiting on the platform near the railing, he engaged in conversation with an acquaintance and, while thus occupied, they backed up to the railing. His companion leaned against the middle post and plaintiff lightly rested his hands on the top board just south of that post. Almost as soon as he touched the board, it gave way and, losing his balance, plaintiff toppled over backward and fell to the ground, sustaining severe injuries. Plaintiff denies that he seated himself on the board or even leaned his body against it. He did not know of its defective condition but witnesses introduced by him say that it had been in that condition a long time and that defendant's agent had received actual notice of the defect a week or two before the injury.

The facts we have stated are collected from the evidence of plaintiff. They are controverted in all material respects by the evidence of defendant, but for present purposes, a statement of defendant's version of the facts would be immaterial.

The principal contention of counsel for defendant is that the demurrer to the evidence should have been sustained. Though plaintiff did not go to the station for the purpose of becoming a passenger on one of defendant's trains, he was not a trespasser, nor can it be said that he was a mere licensee. A person has a right to go on station premises for the purpose of escorting an outgoing passenger or of meeting one whose arrival is expected. To such person, the railroad company does not owe the extraordinary care it owes a passenger, but it does owe him the duty of ordinary care, to maintain its station buildings and platforms in a reasonably safe condition for such uses. [Doss v. Railway, 59 Mo. 27; Langan v. Railway, 72 Mo. 392; James v. Railroad, 107 Mo. 480; Railroad v. Best, 66 Tex. 116, 18 S. W. 224; Gillis v. Railroad, 59 Pa. 129.]

But it was argued that defendant was not bound to erect and maintain railings for persons to sit on or

lean against; that the railing was intended only to mark the platform limits and not as a place of rest and that if plaintiff desired to rest, he should have gone into the waiting room provided for that purpose. In support of this argument, we are cited to the following cases: Stickney v. Salem, 3 Allen (Mass.) 374; Orcutt v. Bridge Co., 53 Me. 500; Kinney v. Onsted, 71 N. W. 482; Kelly v. Lawrence, 195 Mo. 75.

In Stickney v. Salem, a public street of Salem ran out towards the sea and ended at a seawall. The city had built a fence across the street end. Plaintiff's intestate, a Mr. Stickney, walked to the end of the street with a companion and stopped at the fence to behold the view. Mr. Stickney leaned his arms lightly on the fence. It gave way on account of being in ill repair and he sustained a severe fall. The Supreme Judicial Court of Massachusetts held that the legal obligation of the city "of keeping a sufficient railing upon a highway is imposed only when it is necessary to mark the limits of that part of the road which persons may safely travel," and that Mr. Stickney was making an improper use of the railing, saying: "A city or town is not bound by law to erect and maintain railings for persons to sit upon or lean against. They are not intended to be used for the convenience and accommodation of those who seek for a place of rest, while they stop in the highway to lounge, or to recover from fatigue, or to engage in conversation. If a person uses them for such purposes, he does it at his own risk. A town or city cannot be held liable for damages which are sustained by persons in consequence of improper or unauthorized uses of the highway, which occasion or contribute to accidents."

In Orcutt v. Bridge Co. a military company halted on a toll bridge. Plaintiff, a member of the company, reclined against the railing, "half leaning, half sitting." When the order to fall in was given, he sprang forward to take his place in the ranks, when

the railing which was old and rotten gave way and he fell off the bridge. His action against the bridge company was denied on the ground that "it was for the safety of those who should be in the legitimate use of the bridge and its appurtenances as passengers, only, that the corporation was bound to maintain the railing. It is plain from the plaintiff's statement that he was using the railing for no such purpose and that his unauthorized use of it was the immediate cause of the accident."

In Kinney v. Onsted, the plaintiff leaned against the railing of a passageway in the defendant's grain elevator, which he had visited on business, and was injured by the breaking of the railing which was in a defective condition. The Supreme Court of Michigan held he could not recover. We quote as follows from the opinion:

"This case is certainly near the dividing line. The rule is well settled that the owner or occupant of land is liable to those coming to it at his invitation, express or implied, on any business to be transacted or permitted by him, for an injury occasioned by the unsafe condition of the land or the access to it, which is known to him, and not to them, and which he has negligently suffered to exist. But this duty it is held, does not extend so far as to make such an occupant responsible for the unsafe condition of those parts of his premises not intended for the reception of visitors or customers, and where they are not expected to go. See 1 Thomp. Neg., p. 308. Applying these rules to this case, it is clear that, if the plaintiff had suffered an injury from a defect in the floorway of the platform or bridge, or, possibly, if, by misadventure, he had stumbled and fallen against this defective railing, there would be ground for holding that the defendant is responsible for the injury. But the weakness of the plaintiff's case is that the defendant never invited him to enter upon his premises, and put the railing to the

test of supporting his weight, by leaning or lounging against it.''

To the same effect was the decision of our own Supreme Court in Kelly v. Lawrence, where the opinion of the Massachusetts court in Stickney v. Salem was quoted from with approval.

But there is a vital difference between these cases and the case at bar. We are not dealing here with a case where the plaintiff, traveling on a way prepared only for travel and intended to be used for no other purpose, is injured on account of another use he makes of the place. Our concern is with a case where the plaintiff is injured while using the place for the very purpose for which it was intended and prepared. While it is true waiting rooms in railway stations are places provided for the shelter and comfort of the patrons of the company, station platforms (as everyone who has traveled knows) are also universally used as waiting places for trains and defendant must have known when it built the railing that the platform at that place would be used as a waiting place by those who came to meet passenger trains. The fence was more than a mere instrument or appliance to mark the edge of the platform. It was a guard or barrier and it should have been kept strong enough to resist casual or accidental contacts with waiting passengers and others rightfully on the platform. Trains do not always arrive on schedule. Those who meet them often must undergo tiresome delays. Waiting rooms in small depots generally are overcrowded and uncomfortable places on such occasions. Patrons have a right to use the ''open air'' waiting rooms and we think defendant should have anticipated that many persons, either intentionally or thoughtlessly would lean against the platform railings to rest when they had grown tired of standing. To maintain a railing so defective and weak as that depicted in the evidence was nothing short of keeping a trap set for the unwary.

The learned trial judge committed no error in overruling the demurrer to the evidence.

We find no prejudicial error in the record. The first instruction given at the request of plaintiff was erroneous but the same error appears in one of the instructions given at the request of defendant. The error, therefore, was common and its presence affords no ground for disturbing the judgment. It follows that the judgment must be affirmed. All concur.