YORK *et al., Plaintiffs in Error,* v. THE KANSAS CITY, CLINTON & SPRINGFIELD RAILWAY COMPANY.

Division One, July 3, 1893.

1. **Master and Servant:** RAILROAD INSTRUMENTALITIES FOR SERVANT'S USE. Where a railroad company, through its foreman, directs a servant to use a "push car" in moving ties, the law imposes upon it the duty of observing reasonable care to furnish one adequately safe for the contemplated use when operated in the usual and customary way.

2. **Railroad:** INJURY TO SECTION HAND: NEGLIGENCE. In an action against the defendant for the death of plaintiff's son, a section hand, it appeared that he, with others, had been ordered by the foreman to take a "push car" down a siding; that, the grade being a descending one, the men got on to ride; that a switch was open on the wrong track, and that the car ran onto the switch, requiring the men to jump off to avoid injury from collision with some freight cars. The "push car" was of a kind in ordinary use, unprovided with brakes, and was not intended for the transportation of men. The deceased was not directed by the foreman to ride on the car down the track, nor was it necessary to do so in the proper discharge of his duties. *Held,* that there was no negligence on defendant's part in ordering the use of the car.

3. ———: ———: ———. The fact that the switch was turned upon the wrong track, thereby causing the car to run thereon against the standing cars, *held*, under the circumstances of this case, not to show that the premises were unfit for the servant's use.

4. ———: ———: CONTRIBUTORY NEGLIGENCE. The evidence showed that when it was suggested that the men should ride, one of them objected, saying it was dangerous; that, notwithstanding the warning, deceased himself gave the car a start and jumped on. The switch target was in plain view, indicating how the switch was set, but it was unnoticed. *Held*, that the accident was due to the reckless negligence of the men themselves.

*Error to Henry Circuit Court.*—HON. JAS. H. LAY, Judge.

AFFIRMED.

*B. G. Boone* for plaintiffs in error.

(1) This right of action is both penal and compensatory, and minority of deceased has nothing to do with the amount of damages to be recovered. *Phillpott v. Railroad*, 85 Mo. 164. (2) On the question of an established custom of train men, in contradiction of positive rule. *Barry v. Railroad*, 98 Mo. 62. (3) On the question of contributory negligence. *Wagner v. Railroad*, 97 Mo. 512, and cases cited. (4) As to liability of railway company, for negligent acts of co-employee, and an unskillful employee. *Sullivan v. Railroad*, 97 Mo. 113; *Daugherty v. Railroad* 97 Mo. 664. Who is not a fellow-servant or co-employee in a legal sense. *Stephens v. Railroad*, 96 Mo. 207; *Barry v. Railroad*, 98 Mo. 62. (5) The clause or subdivision of the statute restricting and confining this form of action to passengers alone, refers to cases when the damages claimed resulted from defective railroad and machinery, and does not apply to cases like the one at bar, when damages claimed is for negligence, and carelessness of an officer of the road, or to one holding a

superior position over the party injured or killed. *Higgins v. Railroad*, 36 Mo. 418. (6) On the question of jumping or sliding off end of the push or flat car when in motion. *Adams v. Railroad*, 74 Mo. 553; *Stephens v. Railroad* ,86 Mo. 221. These cases show that a person is not expected to exercise same care, prudence and judgment, when trying to extricate himself from danger, as he is when in no danger and has possession of all his faculties. 74 Mo. 533; 86 Mo. 221; 31 N. Y. 314; 89 Pa. St. 59; 43 N. Y. 121; 44 Wis. 638. (7) If the master or servant standing in the position or relation of vice-principal, orders an employee under him into a place of danger, or orders him to perform labor which subjects him to danger, which the master or vice-principal knows of, or could by ordinary care and prudence know of, and does not inform employee or subordinate, and the latter is ignorant of such danger, and he obeys and is killed or injured, the law will not charge deceased or injured party with contributory negligence. *Miller v. Railroad*, 12 Federal Rep. 600; 17 Federal Rep. 67; 36 Iowa, 372; 76 Pa. St. 389; 24 N. Y. 410. (8) The negligence of the foreman of section men is the negligence of the master, and not that of the fellow-servant or co-employee. *Higgins v. Railroad*, 43 Mo. App. 547; *Bowen v. Railroad*, 95 Mo. 278; 71 Mo. 67; 86 Mo. 639. (9) The servants and employees of railroad companies have a right to rely upon the performance of duties imposed by law on railway companies. 1 Thompson on Negligence, sec. 3, p. 461; *Goodfellow v. Railroad*, 106 Mass. 462; 32 N. Y. 337; 33 Md. 542. (10) The risk a co-employee and fellow-servant assumes is announced in the following cases. *Renfro v. Railroad*, 86 Mo. 302; *Flynn v. Railroad*, 78 Mo. 195; *Porter v. Railroad*, 71 Mo. 66; 69 Mo. 416; 67 Mo. 239; 62 Mo. 35. (11) The court manifestly erred in giving the

instruction in the nature of a demurrer to the evidence, as asked by defendant, and thereby taking the case from the consideration of the jury. The court should not take the case from the jury if there is any evidence, however slight, tending to sustain the allegations of the petition. *Kelly v. Railroad,* 70 Mo. 604; *Cook v. Railroad,* 63 Mo. 367; *St. Vrain v. Levee,* 56 Mo. 590.

*Wallace Pratt, C. W. Blair* and *I. P. Dana* for defendant in error.

(1) The writ of error should be dismissed for failure to comply with rules 11, 12, 13 and 14 in regard to serving and filing abstracts of the record, and for failure to furnish a proper statement of the case. *Bank v. Iron Co.,* 97 Mo. 38; *Long v. Long,* 96 Mo. 180; *Craig v. Scudder,* 98 Mo. 664; *Snyder v. Free,* 102 Mo. 325; *Thompson v. Allen,* 107 Mo. 479; *Ebersole v. Rankin,* 102 Mo. 488; Rules of Supreme Court; Revised Statutes, 1889, sec. 2301. (2) The trial court did not err in sustaining the demurrer to evidence, because: *First.* There was no testimony tending to show negligence on the part of defendant in the respects charged in the petition or in any respect. *McDermott v. Railroad,* 87 Mo. 285; *Bowen v. Railroad,* 95 Mo. 268; *Harty v. Railroad,* 95 Mo. 368; *Waldhier v. Railroad,* 71 Mo. 514; *Harlan v. Railroad,* 65 Mo. 22; *Stepp v. Railroad,* 85 Mo. 229; *Gurley v. Railroad,* 104 Mo. 223; *Roddy v. Railroad,* 104 Mo. 244. (3) The testimony showed that deceased's injuries were due to his own carelessness. 4 American and English Encyclopedia of Law, 15; *Murray v. Railroad,* 101 Mo. 236; *Kellny v. Railroad,* 101 Mo. 67; *Hudson v. Railroad,* 101 Mo. 13; *Schlereth v. Railroad,* 96 Mo. 509; 1 Shearman & Redfield on Negligence [4 Ed.], secs. 56, 112 n; *Hunt v. Railroad,* 89 Mo. 607; *Jackson v. Hardin,* 83 Mo. 175; *Powell v. Railroad,* 76 Mo. 83.

MACFARLANE, J.—The suit is under the statute to recover damages for the death of the infant son of plaintiffs, caused by the negligence of defendant, as is alleged.

The petition charged that plaintiffs are husband and wife and George F. York was their son, and on the twenty-seventh day of March was a minor and unmarried, and was in the employ of defendant as a section hand, under the control of John Sullivan as foreman. That on said day their said minor son was, with four other laborers, directed to take a "push car" from the section at Deepwater down on a side track to the Currier brickyard and bring back four railroad ties for use at the station; that, pursuant to said order, they proceeded with the push car to said side track and got upon it to ride down to the brickyard; that a switch from said side track was open connecting that track with another, leading to a tile factory; that the car ran on the latter track, and by reason of being on a steep grade the car gained such velocity as to require their son and the other laborers to jump therefrom to escape threatened imminent danger, and in jumping their son was killed.

The negligence charged as causing the death was: *First.* That John Sullivan, the foreman under whom he worked, was not a competent man for the position, which was known to defendant and unknown to deceased. *Second.* That said foreman neglected to go with deceased and the other men to move said ties, to direct and control their actions in the performance of their duties in a safe and proper manner. *Third.* That said foreman negligently directed deceased and his co-laborers to perform the hazardous work without having the proper switches open so the car could be taken to the place for loading the ties in safety, but negligently left a switch turned upon the wrong track, which

was unknown to deceased. *Fourth.* That defendant failed to provide said car with safe and suitable motive power, and negligently furnished them with a car having no brakes or other suitable appliance for regulating its speed and managing its movements, all of which was unknown to deceased. *Fifth.* That deceased was young and inexperienced and neither defendant nor said foreman advised him of the dangers he incurred nor instructed him how to perform his duties in safety, and by reason of all such acts of negligence plaintiff was killed in the discharge of his duties without fault or want of care on his part.

The answer was a general denial and a plea of contributory negligence.

The evidence showed that deceased was only sixteen years of age, but was large, strong and active for his age. He weighed one hundred and sixty pounds and did a man's work and received a man's wages. He had only been employed at work on the section about two weeks. Some time previous to that he had worked in the tile factory. On the afternoon of March 27, 1890, deceased and four men were directed by foreman Sullivan to take a "push car" and go from the station at Deepwater down to the brickyard and get and bring up to the station four railroad ties for use there. This car is about seven feet long, wide enough to run on the track, weighed about two hundred and fifty pounds, and was in common use by the section men in moving heavy articles short distances. It could be lifted by five men from one track to another, was without brakes and was moved by pushing by hand. All these men were familiar with its use.

At this station there were two switch tracks, one of which ran to a brick yard and the other, separating from the former by a switch, ran to a tile factory. The grade from the main track to the tile factory and the

brickyard was descending. The switch had a target which indicated the track upon which it was turned. The men, in obeying the direction of the foreman, pushed the car down to the switch track and lifted it over on that track. The switch on this track as turned connected it with the track to the factory, while they wished to take the car to the brickyard. Some box cars were standing on the lower end of the factory track. When the men started the car down the switch track it moved by its own weight, and they all got upon it to ride down. The car ran in on the factory track and had gained a velocity of ten or fifteen miles an hour, and when about to run into the standing box cars, the men jumped off; deceased being on the hind end of the car jumped off on the track and his head struck a tie or rail, by which he received injuries from which he afterwards died.

At the close of the evidence the court gave an instruction directing a verdict for defendant; a verdict was returned accordingly and judgment was entered for defendant. To reverse the judgment plaintiffs prosecute their writ of error.

The only question in the case is, whether there was evidence from which an inference of actionable negligence on the part of defendant could have fairly been drawn; and if so, then whether no other inference than that of contributory negligence on the part of deceased could be fairly drawn therefrom.

I. When defendant, through its foreman, ordered deceased to use a "push car" in moving the ties, the law imposed upon it the duty of observing reasonable care to furnish one adequately safe for the contemplated use, when operated in the usual and ordinary way. A promise to do so was implied under the contract of employment. Wood on Master and Servant, p. 684, sec. 329.

The car in question was evidently designed for use by section men in moving heavy materials short distances to points on the road where they might be needed in repairing the track. Its size, construction, weight, and particularly its name, indicated that it was to be moved by hand. The evidence also shows, without conflict, that these were the uses to which such cars were applied, and the manner of propelling them. The construction of the car, as well as all the evidence, shows that it was not intended for use as a means for the transportation of the track men from place to place. Hand cars were adopted and furnished for that purpose.

Deceased and his fellows were not directed by the foreman to ride the car down the track, nor was it necessary to do so in the proper discharge of their duties. Such cars were in common use and none of them were supplied with brakes. The death of deceased was not caused by any defect or deficiency in the car affecting its safety when used in the usual manner and for the purposes for which it was designed, and there was no negligence on the part of defendant in ordering its use.

II. The law also imposed upon defendant the use of proper care to see that the premises were in a fit and proper condition for use by deceased in performing the duty required of him, if done in the usual manner. The complaint in this connection is, that the switch was turned upon the wrong track, thereby running the car upon the track occupied by the standing freight cars, and, to avoid injury from a collision with them, jumping from the car became necessary.

The evidence showed that the switches were set by the train men and were uniformly left turned upon the track last used by them. In the common use of the push car, it was not transferred from one track to

another by means of the switches, but by lifting it over. It could make no difference, therefore, in the ordinary use of the car, upon which track the switch was turned. It could not be said that the premises were in an unfit and dangerous condition for executing the order of defendant, merely from the fact that the switch was set upon the tile factory track instead of the one to the brickyard.

III. The only witnesses to the accident who were examined on the trial, both testified that when it was proposed to ride the car down the track, one of them said, "it will not do, it is dangerous." He explained that the grade was steep and the wind was unfavorable. Notwithstanding the warning, however, deceased himself gave the car a start and all jumped on. These witnesses also testified that the switch target was in plain view and indicated upon which track the switch was set, but they did not notice it. From this evidence, which is undisputed, it is evident that these men brought on the disaster by their own reckless negligence.

IV. It does not appear from the evidence that the duties that deceased and his co-laborers were directed to perform were either intricate or hazardous, or such as required the immediate supervision and direction of the foreman, nor was it such as required special instruction and warning to deceased on account of his youth and inexperience. Deceased had been using the car that day and was familiar with the ordinary manner of propelling it. The duty required was of the simplest character, which one, with the least experience, should have been able to perform in safety.

V. It appearing that the order of the foreman was not negligent, it is unnecessary to inquire whether or not he was skillful, careful and otherwise competent.

The unfortunate result was not caused by any incompetency of the foreman or negligence of defendant, and the judgment is affirmed.    All concur.