ANDREW J. ALLBRITTON, Appellant, v. PROPERTY SERVICING COMPANY, a Corporation, and KOTSREAN REALTY COMPANY, a Corporation, Respondents, No. 41866—238 S. W. (2d) 401.

Division Two, March 12, 1951.

Rehearing Denied, April 9, 1951.

Edward H. Tenney, Jr., and Robert L. Smith for appellant.

*Orville Richardson, John M. Goodwin* and *Benjamin Roth* for respondents.

[402] WESTHUES, C.—The nature of this case was stated in appellant's brief as follows: "Plaintiff sued defendant Property Servicing Company, the owner of certain premises, and defendant Kotsrean Realty Company, its agent in the management thereof, for $30,000.00 damages for injuries sustained due to the breaking of a large and heavy marble slab, placed by one Benjamin Schubert, the agent of defendants, across certain outside railings when stepped upon by plaintiff as he helped to install outside screening. Trial resulted in the court sustaining defendants' motion for a directed verdict after plaintiff's evidence was in, upon the following grounds, '(2) There is no evidence whatsoever that the plaintiff had a right to stand or be on the slab of rock or marble, mentioned in the evidence, under the terms of his tenancy. (3) There is no evidence whatsoever that the slab of marble was dangerous or defective and that

it would break if used for the limited purposes for which it had been put there by the witness Schubert.'" Failing to obtain a new trial, plaintiff appealed.

The sole question on this appeal is whether the trial court was justified in directing a verdict for the defendants. This requires a full statement of the evidence. In August, 1947, plaintiff and his family and ten other families lived in a rooming house owned by the defendants, located at 2624 Russell Avenue, St. Louis, Missouri. Ivan Estel, his wife, and infant daughter occupied two rooms on the first floor in the west rear portion of the house. There were only two windows in their "apartment." One window was in the rear of the building and a few feet east thereof was a door. This door was not used because of a basement entrance located immediately under this door. Two boards about two feet in height were nailed across the opening over the doorsill. The distance from the doorsill to the bottom of the basement steps was about 7 feet 5 inches. The steps to the basement were guarded by a banister on each side thereof. The banisters were 4 feet 10½ inches apart and 32 inches in height. A two-by-four had been nailed on top of the banister posts located against the wall next to the doorsill.

One Benjamin Schubert and his wife were also tenants living in the building. Schubert acted as agent for the owner. The evidence was that Schubert and his wife cared for the premises and when the tenants had complaints they went to the Schuberts. The Schuberts were allowed $20 per month for their duties. Some time during the summer of 1947, Schubert placed a marble slab across the banisters and flush with the two-by-four above-mentioned. On this slab Schubert placed a concrete flower box and planted flowers therein. The purpose was to beautify the premises. Tenants who used the basement when doing their laundry complained to Schubert that water from the flower box dripped on their heads and on the laundry as they passed beneath the box in going to and from the basement. Schubert then removed the box and in its stead placed a number of tin cans with flowers planted therein.

The evidence was that it was unusually hot during the summer of 1947. The Estels were having trouble with their baby because of the lack of ventilation in their rooms. They testified that because of flies and mosquitoes they would not open the door over the basement steps. Plaintiffs testified they asked Mrs. Schubert for permission to nail a screen over the opening of the doorway and that Mrs. Schubert gave her consent. On the evening of August 5, 1947, Mr. Estel attempted to nail some screen over the door. He found that the screen he had purchased was too narrow to cover the opening so he cut it in three lengths and proceeded to nail the screen on crosswise. In attempting to do so, he stood on the doorsill, one foot on the outside of the boards which had been nailed across the

opening and the other foot on the inside. At this time Estel's wife and baby and plaintiff and his wife were in the back yard. They noticed Estel's predicament and plaintiff's wife suggested to plaintiff that he help Estel. Plaintiff thereupon went to aid Estel and they successfully nailed the two upper [403] strips of screen. However, when they attempted to nail the lower pieces of screen it was necessary for them to be on the outside of the door opening. Estel stood with one foot on the marble slab over the west banister and the other on the two-by-four. He was holding the screen and plaintiff attempted to nail it to the door frame. In doing so he required more room so he placed one foot on the marble slab about midway between the banisters. When he did so, the slab broke and the plaintiff fell to the bottom of the basement stairway and sustained serious injury to his right foot.

Respondents say that the trial court properly directed a verdict for the defendants because plaintiff used the slab for an unintended and unauthorized purpose; that plaintiff failed to show that the marble slab was dangerous or defective. Respondents say further that plaintiff was guilty of contributory negligence as a matter of law. Among cases cited by respondents were Roach v. Herz-Oakes Candy Co., 357 Mo. 1236, 212 S. W. (2d) 758, and Bartlett v. Taylor, 351 Mo. 1060, 174 S. W. (2d) 844.

Appellant cited many cases among which we find Streicher v. Mercantile Trust Co., (Mo.), 31 S. W. (2d) 1065, and Olian v. Olian, 332 Mo. 689, 59 S. W. (2d) 673. In the Streicher case, a painter, while painting a window frame on the outside, stood on the window sill and held on to the window sash. The sash gave way and the painter fell. The facts in the case were that an inspector of the building, an employee of the owner, had knowledge of the manner in which the painter was working and also knew that the window sash was defective. There was a verdict for the defendant. This court reversed and remanded the case for retrial for error in an instruction which informed the jury that if the window sash was reasonably safe for the purpose for which it was constructed then the painter could not recover.

In the Olian case, plaintiff, a child, fell off a back porch when a screen against which he leaned gave way. Liability was sustained on the theory that it was the duty of the landlord to repair a porch used in common by tenants. It was shown that the landlord had knowledge of the defect and had promised to make repairs. The facts in the Olian and Streicher cases were more favorable to the plaintiffs than the facts in the present case. We can see how respondents would say that they do not control the present case.

We now come to the two cases above-mentioned and cited by respondents. In the Roach case, an employee of an independent contractor was killed when he fell from a window while attempting to

wash it. It was claimed that the window frame was defective and such defect caused the deceased to fall. The defendant Candy Company, lessee of the building, was held not liable in such case where the defective condition was obvious to the employee. But the court said defendant would be liable if the unsafe condition were known to it and not obvious or known to the employee. The case is not a landlord and tenant case. However, in the course of the opinion when considering points presented by the parties, the court said, 212 S. W. (2d) l. c. 763 (4) : "When the landlord in compliance with an agreement or voluntarily 'undertakes' to make repairs, however, he has the duty in acting to exercise due care." See also 52 C. J. S. 58, Sec. 418.

In the Bartlett case this court reviewed at length the law governing landlord and tenant. It was expressly held that when a landlord undertakes to make repairs he must exercise due care. In the case before us the landlord undertook through Schubert, the agent, to place the marble slab and flowers on the banisters to improve the appearance of the property. If in doing so the landlord negligently created a hazard and injury followed, the landlord would, absent contributory negligence, be liable.

The first contention of respondent is that plaintiff used the marble slab for an unintended purpose. Such fact alone would not necessarily defeat plaintiff's claim. If the slab was placed in [404] such a position that an ordinarily prudent person was likely to step upon the slab, then an injured person would have a cause of action even though the slab was to serve some other purpose. Streicher v. Mercantile Trust Co., supra, 31 S. W. (2d) l. c. 1068 (2, 3). Was the marble slab in question so placed that it was likely to be used by persons stepping thereon? We think a jury could so find. The slab was placed before a door not ordinarily used for egress from the building because there was no covering over the banisters nor were there steps leading from the door to the ground. Yet the door was not nailed shut; it could be opened and persons could step on the banisters and thence to the ground. The slab being in front of the door would make such an exit from the room inviting and not too inconvenient. Then we have the further fact that Mrs. Schubert had knowledge that Estel was going to tack a screen over the door frame. As above-mentioned Mrs. Schubert's husband was the agent of the landlord; she helped her husband in his duties as such agent. Under the evidence it was a question for a jury to decide whether the placing of the slab on the banisters constituted negligence.

The evidence is rather vague as to whether there was a defect in the slab or whether the marble slab in and of itself was unsafe. Plaintiff introduced a piece of broken marble slab which he claimed was found near the basement door. There was evidence pro and con as to whether the exhibit was a part of the slab in question. Schubert in his evidence stated it was not; that the slab he placed on the ban-

isters was only ¼ to ½ inch thick. The exhibit is 1 inch thick. Schubert further testified that he examined the slab very closely before he placed it on the banisters and it was in good condition. The exhibit in evidence did have a hole in it but there was no evidence that such hole would or would not weaken the slab. The fact remains that the slab did break even though plaintiff did not place all of his weight thereon. We hold a jury would have been authorized to find that a hazardous condition was created. On a retrial the parties may have evidence whether a marble slab such as that involved in this case is or is not safe.

We cannot say as a matter of law that plaintiff was guilty of contributory negligence. The stairway to the basement was a common passageway for the tenants who used the basement as a place to do their laundry work. It was, therefore, the duty of the landlord to keep such passageway in a reasonably safe condition. The tenants recognized and so did Schubert that he (Schubert) had control over the steps and banisters. When the concrete flower box leaked, the tenants did not remedy the situation; they complained to Schubert and he removed the concrete box. Schubert assumed the authority to control what was or what was not to be placed on the banisters. 52 C. J. S. 103, Sec. 428. Plaintiff having seen the concrete flower box on the slab under which the tenants were required to pass to and from the basement would have a right to assume that the slab was not likely to break. We hold plaintiff not guilty of negligence as a matter of law. Bartlett v. Taylor, supra, 174 S. W. (2d) l. c. 850 (8, 9) ; 65 C. J. S. 715-720, Sec. 118c.

We cannot see wherein the case of Small v. Ralston-Purina Co., 202 S. W. (2d) (Mo. App.) 533, l. c. 538 (8, 9), cited by respondents on the question of contributory negligence, is applicable to the case before us. In the Small case plaintiff stepped on a foreign object, a board, and the board slid forward because it was lying on pebbles. The court noted that plaintiff, an inspector, knew the ground and tracks were covered with pebbly-like seeds and grain. The court held plaintiff had as much knowledge as anyone of the danger; that the situation was open and obvious and, therefore, he could not maintain his action for damages.

In the case before us the landlord through its agent placed the slab over the banisters. A jury could find that plaintiff had the right to assume that Schubert would exercise due care and would not place a slab over the banisters (on which [405] was a concrete box weighing about 75 lbs.) that was likely to break. 65 C. J. S. 715-720, Sec. 118c.

We must rule that the case should have been submitted to a jury and, therefore, the judgment is reversed and the case remanded for retrial. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.