McDILL

v.

TERMINAL R. R. ASS'N OF ST. LOUIS.

No. 43880.

Supreme Court of Missouri.

Division No. 2.

April 12, 1954.

Motion for Rehearing or to Transfer to Court en Banc Denied June 14, 1954.

30 N.E. 865; Dunn v. Dunn, 302 Ky. 188, 194 S.W.2d 372.

Warner Fuller, Arnot L. Sheppard and John P. Montrey, St. Louis, for appellant.

William H. Dahman, Tenney & Dahman, St. Louis, and Robert L. Smith, Clayton, for respondent.

BOHLING, Commissioner.

The Terminal Railroad Association of St. Louis, a corporation, appeals from a $10,000 judgment in favor of Thomas A.

McDill for injuries sustained in the performance of his work for defendant. Plaintiff, in separate instructions, submitted actionable negligence on defendant's part in permitting the use of an anvil or slab, the top edge of which had become rounded, for the performance of plaintiff's work; and in allowing the floor to remain uneven and sloping in front of the press at which plaintiff was working. Defendant claims the evidence did not make a case on either theory; that one of plaintiff's instructions was erroneous; that incompetent evidence was admitted; and that the verdict is excessive.

Plaintiff, a boilermaker of many years experience, worked at defendant's Brooklyn shop, near East St. Louis, Illinois. On September 5, 1951, plaintiff and his helper, William E. Martin, were flattening a sheet iron side riser of a diesel step assembly, which plaintiff described as being somewhat rectangular in shape, 28 inches by 41 inches, except one corner was cut off diagonally, and ½ inch thick, weighing approximately 100 pounds.

The only equipment available for this work was an 11 foot 9 inch pneumatic clamp or press, which faces to the south. It has two jaws, 7 inches wide. The upper jaw moves up and down under air pressure and is controlled by a lever. The lower jaw is immovable, and rests on a concrete base, which extends about 4 or 4½ inches to the south of the lower jaw at the floor level. The lower jaw is 20¼ inches high.

A movable iron anvil or slab, having a straight edge on the south, rests by gravity on the lower jaw of the press. The anvil is 3¾ inches thick, 64 or 65 inches long, and 12 inches wide at its narrow end and at its other end is semicircular, a reverse curve, being about 21 inches wide. The top of the anvil is about 24 inches above the floor level and, when in use the semicircular portion on the north rests upon a sawhorse, shimmed up to balance the anvil. The opening between the anvil and the upper jaw when up is about 9 inches. A swinging "jib" crane is used to move the anvil, but the workmen strike it with a sledge hammer if it is to be shifted a short distance.

When in use, the anvil is positioned to extend about 3½ inches beyond the south edge of the jaws of the clamps. In connection with the operation of the press, the boilermaker uses a flatter and has his helper strike it with a sledge hammer to flatten the sheet iron. It is usually necessary to turn the metal sheet over and work on both sides of it.

Plaintiff testified that the anvil had been in use for 30 years that he knew of; that originally its straight edge, or the side facing south, presented a squared edge; that the hammering on it over the years caused the upper edge to be rounded off for about an inch or so back, inexperienced helpers frequently striking the edge of the anvil with sledge hammers.

The floor in front of the press is loose dirt. Mr. Coggins, defendant's foreman and witness, testified that the men working in front of the press twist and turn; that their feet work the dirt away, and whenever it became bad it was leveled up. Plaintiff testified that on the occasion in question the floor was "pretty well scratched out," "eat out" there and, indicating, "if you were putting your foot up there like that it would make you stand on your heel." Plaintiff's helper Martin estimated the slope extended from the concrete base for 4 inches to the south. Photographs of the floor and press corroborate the evidence favorable to plaintiff.

Plaintiff was turning the sheet iron over when injured. The press had been released. He stepped back, pulling the sheet iron southwardly, toward him, and stood it up on its edge on the anvil, resting it against his body or chest as he changed his handholds, and when he took a step forward, he stubbed his toe on the concrete and it threw him against the sheet iron, skidded it off of the anvil, and, although he tried to get his feet out of the way, he was hindered in doing so and was not fast enough. The sheet iron fell on his right great toe. A portion of the toe was amputated. He

testified: "If that had been a square edge on there, it wouldn't have slipped."

Defendant contends there is no evidence of actionable negligence with respect to the top of the anvil having become rounded; stating that the anvil was reasonably safe for the purpose for which it was intended and plaintiff, in using the edge of the anvil as a resting place for the heavy metal sheet in turning it over, was making an improper or unintended use of the anvil, stressing 56 C.J.S., Master and Servant, § 251, notes 69–71, p. 1005; Wilson v. Missouri Pac. R. Co., 319 Mo. 308, 5 S.W. 2d 19, 22; Graham v. Chicago St. P., M. & O. R. Co., C.C., 62 F. 896; Manche v. St. Louis Basket & Box Co., Mo.Sup., 262 S.W. 1021, 1022[5]; York v. Kansas City, C. C. & S. Ry. Co., 117 Mo. 405, 411(I), 22 S.W. 1081, 1082(1); Kelley v. Lawrence, 195 Mo. 75, 92 S.W. 1158, 1161; Campbell v. Southern Pac. Co., 120 Or. 122, 250 P. 622, 624[6]; St. Louis-San Francisco R. Co. v. Rogers, 172 Ark. 508, 290 S.W. 74, 76[2, 5].

Defendant also says that the use plaintiff made of the anvil was not a customary or frequent use, and defendant was not under a duty to make the anvil safe for such use. 3 Labatt, Master and Servant, 2d Ed., § 923; 56 C.J.S., Master and Servant, § 251, notes 72–75, p. 1006.

There was substantial evidence that in properly flattening the piece of sheet iron plaintiff would be required to turn it over, and that the top south edge of the anvil was not square but had become rounded. Foreman Coggins testified how the sheet iron might be turned over and the workman stand back from the clamp to avoid injury if it fell, stating plaintiff's method was not workmanlike; but, as we read his testimony, boilermakers turned the metal sheets over as plaintiff did although as a rule it was not done that way.

Plaintiff testified that he had flattened like sheets before; that his method of flattening the sheet iron was not his idea; that all of defendant's boilermakers used practically the same procedure, it might vary a little; that one might turn it one way and another the other way; and that everyone flattened iron sheets practically the same way. Plaintiff's helper testified that he noticed nothing unusual in the way plaintiff was proceeding. Plaintiff also had testimony that plaintiff's procedure was safer than the method described by defendant's foreman.

The evidence favorable to plaintiff made submissible issues on defendant's knowledge that the method used by plaintiff in turning the metal sheet over would likely be followed and that he would make use of the top edge of the anvil and the floor in so doing. Wellinger v. Terminal R. Ass'n, 353 Mo. 670, 183 S.W.2d 908, 911 [1, 2]; Hill v. Terminal R. Ass'n, 358 Mo. 597, 216 S.W.2d 487, 491, 492[1–3]; Allbritton v. Property Servicing Co., 361 Mo. 1041, 238 S.W.2d 401, 403[3]; Streicher v. Mercantile Trust Co., Mo.Sup., 31 S.W. 2d 1065, 1068[4, 5]. As between master and servant, persons engaged in the same business, we have said a custom need not be proven with such fullness as would make it a rule at common law. O'Donnell v. Baltimore & O. R. Co., 324 Mo. 1097, 26 S.W. 2d 929, 933[8]; Young v. Terminal R. R. Ass'n, Mo.Sup., 192 S.W.2d 402, 404[1–3]; 25 C.J.S., Customs and Usages, § 9, p. 84. A number of defendant's cases were before the court in the Wellinger and Hill cases, supra.

Defendant contends plaintiff failed to discharge his burden of establishing actionable negligence with respect to the alleged uneven and sloped condition of the floor.

The testimony hereinbefore mentioned and the photographs admitted in evidence of defendant's press and floor were sufficient to sustain findings that immediately south of the extension of the concrete base of the press the dirt floor had been loosened by the movement of the feet of men using sledge hammers and otherwise working at the press to such an extent that it sharply sloped for about 4 inches to the south; that defendant had knowledge of this; that the floor was made level when it became bad; and that this condition contributed to plaintiff stumbling or stubbing his toe and hindered him in getting his foot out of the way of the falling sheet iron.

The following cases holding actionable negligence for the jury bear on the issue. A sudden, abrupt, and rounded downward slope of 1½ inches in 8 inches in the surface of a sidewalk. Taylor v. Kansas City, 342 Mo. 109, 112 S.W.2d 562, 565[5]. A concave depression (or dip) of 4 to 8 inches in 15 feet in the surface of a street in a case wherein the passenger in the back seat of an automobile was injured. McCormick v. Kansas City, Mo.Sup., 250 S.W.2d 524, 525[1]. A depression of ¾ to 1½ inches and 3 feet square in a sidewalk. Butler v. City of University City, Mo.App., 167 S.W. 2d 442, 445[3]. A pie pan hole 1½ to 4 inches deep, 6 to 8 inches in diameter in a street. Young v. Kansas City Pub. Serv. Co., Mo.App., 255 S.W.2d 113, 116[3].

Defendant's cases may be distinguished on the facts and the applicable law. Sprankle v. Thompson, Mo.Sup., 243 S.W.2d 510, 514[3, 4]; Ford v. Dickinson, 280 Mo. 206, 217 S.W. 294, 298[1]; McIntyre v. St. Louis & S. F. R. Co., 286 Mo. 234, 227 S.W. 1047, 1051[4], involved injuries to switchmen occasioned by insufficient clearances with structures maintained by the railroad, so far as shown, in accord with proper railroad operating practices. In Healy v. Central R. Co., D.C.N.Y., 35 F. Supp. 591, plaintiff tripped over a steam pipe connected with a float bridge, the pipe being required to move vertically for the proper functioning of the float bridge. In Brady v. Southern R. Co., 320 U.S. 476, 480, 64 S.Ct. 232, 88 L.Ed. 239, a five to four holding, there was no showing that it was customary or even desirable for a railroad to equip a derailer with a light. See Luthy v. Terminal R. Ass'n, Mo.Sup., 243 S.W. 2d 332, 337, where the Brady and Healy cases are mentioned.

The evidence favorable to plaintiff establishes a defect which a jury might reasonably find to be more than slight or trivial in nature and such as might reasonably have been anticipated as likely to contribute to the injury of an employee engaged in work around defendant's press. Bailey v. Central Vt. Ry., 319 U.S. 350, 353, 63 S.Ct. 1062, 87 L.Ed. 1444; Blair v. Baltimore & O. R. Co., 323 U.S. 600, 604, 65 S.Ct. 545, 89 L.Ed. 490; Wilkerson v. McCarthy, 336 U.S. 53, 59, 60, 69 S.Ct. 413, 93 L.Ed. 497.

Charles F. Grant took certain measurements at defendant's press on March 16, 1953, and defendant complains under its "Point II" of the admission in evidence of his measurements of the slope of the floor south of the concrete base as follows:

"A. Evidence as to the slope of the floor on March 16, 1953, was not relevant or admissible as to the condition of the floor on the date of plaintiff's injury, September 5, 1951"; citing Wigmore on Evidence, 3d Ed., § 437(1); Wallingford v. Terminal R. Ass'n, 337 Mo. 1147, 88 S.W.2d 361, 366; Newcomb v. New York Cent. & H. R. Co., 169 Mo. 409, 431, 69 S.W. 348, 355; Stoher v. St. Louis, I. M. & S. Ry. Co., 91 Mo. 509, 516, 517, 4 S.W. 389, 392, 393; Turrell v. State, 221 Ind. 662, 51 N.E.2d 359, 362[8, 10, 11], and Killoren Electric Co. v. Hon, 211 Ark. 403, 200 S.W.2d 775, 777[1].

"B. The admission of this testimony was harmful and prejudicial to the defense"; citing General Motors Corp. v. Holler, 8 Cir., 150 F.2d 297, 300[9]; Gurwell v. Jefferson City Lines, 239 Mo.App. 305, 192 S.W.2d 683, 690[17, 18]; Anderson v. Biscoe, Mo.App., 201 S.W.2d 432, 434[4].

Wigmore on Evidence, supra, is to the effect that the propriety of an inference that a prior or subsequent existence is evidential of a later or earlier existence depends on the nature of the thing whose existence is in issue; and the cases under "A," supra, hold that testimony of the condition of the specific thing giving rise to plaintiff's injuries at a time subsequent to the respective occasion involved was too remote to permit of an inference having probative value of its condition at the time of injury to make a submissible case on defendant's negligence, sustaining defendant's contention to that extent.

Of defendant's cases under "B," supra: General Motors Corp. v. Holler was an action by an employee based on the employer's alleged negligent failure to comply with the Missouri Occupational Disease law, and stated, in conformity with the holding, that it is almost universally held error to permit

an employee to show that his employer corrected the condition existing at the time of injury as evidence, in the nature of an admission, of the employer's negligence. The Gurwell and Anderson cases are cited as holding, respectively, that an error is presumed to be harmful and that the burden of showing the error to be harmless is upon respondent.

■ Section 512.160(2), RSMo 1949, V. A.M.S., provides: "No appellate court shall reverse any judgment, unless it believes that error was committed by the trial court against the appellant, and materially affecting the merits of the action." Under the statute the burden rests upon the appellant to establish reversible error. Mueller v. Schien, 352 Mo. 180, 176 S.W.2d 449, 453 [7–9]; Cornwell v. Highway Motor Freight Line, Inc., 348 Mo. 19, 152 S.W. 2d 10, 16[7]; Smithpeter v. Wabash R. Co., 360 Mo. 835, 231 S.W.2d 135, 145[13, 14], 19 A.L.R.2d 950; Schraedel v. St. Louis Pub. Serv. Co., Mo.App., 248 S.W.2d 25, 32[7, 8], and Anderson v. Biscoe, supra, cited by defendant.

■ Witness Grant was called to the stand by plaintiff in rebuttal. Plaintiff adduce evidence in chief, which we have hereinbefore narrated, of the condition of the dirt floor. We do not repeat it. He also had evidence that its condition at the time of his injury was its normal condition. Defendant in the direct examination of its witness Hussman developed that he accompanied Mr. Grant to defendant's shop and Mr. Grant had inspected the press and taken measurements, including a measurement of the slope in front of the press. Later, witness Coggins, defendant's foreman, under cross-examination leading up to Mr. Grant having measured the floor, stated, when asked how much of a drop the measurement showed: "I didn't observe it too close, but it looked like an inch and a half." Mr. Grant was permitted to testify, on the theory his answer was in rebuttal to witness Coggins' testimony, that his measurements of March 16, 1953, showed a 3 inch drop or total slope in the floor to a point 2½ inches south of the concrete base of the press.

The questioned testimony of witness Grant was not offered in chief to make a submissible case as in the cases cited by defendant; and, under the authorities mentioned last above, defendant has not discharged its burden of establishing reversible error in the circumstances of the instant record.

■ Defendant questions plaintiff's instruction No. 1, submitting negligence in permitting the use of a defective anvil. Defendant first contends the clause "and if you find from the evidence that it was negligence on the part of defendant Terminal Railroad Association to allow said slab to be used for said purpose" is broader than the petition. Banta v. Union Pac. R. Co., 362 Mo. 421, 242 S.W.2d 34, 42, is cited. The instant instruction was in the conjunctive throughout. Plaintiff's petition, among other charges, alleged negligence in that " * * * defendant furnished a machine * * * that when used for said purpose [straightening sheet iron] was dangerous and likely to result in the type of injury that was caused to the plaintiff herein * * *." The submission in the instruction was within the charge in the petition, as well as within the evidence adduced on behalf of plaintiff without objection and hereinbefore mentioned. Jenkins v. Kurn, 348 Mo. 942, 156 S.W.2d 668, 672[5]; Copeland v. Terminal R. Ass'n, 353 Mo. 433, 182 S.W. 2d 600, 605[3]; Warning v. Thompson, Mo., 249 S.W.2d 335, 340[4], 30 A.L.R.2d 1176.

■■ Defendant, omitting the qualifying phrase "and if you find from the evidence" also says the remaining portion of the above quoted clause gave the jury a roving commission to go beyond the specific negligence charged, characterizing it as "plaintiff's shotgun submission." No authority is cited and defendant's argument, ignoring other required findings in the instruction for a plaintiff's verdict, is restricted to said portion of the quoted clause. As stated, the instruction was in the conjunctive throughout. The words "said slab" and "said purpose" referred to prior submitted and required findings in the instruction. The meaning of an instruction is to be determined from its entirety and it is

not to be condemned by separating from their setting isolated words, phrases or clauses and construing them separate and apart from their context. Pohl v. Kansas City, Mo.Sup., 238 S.W.2d 405, 406[1]; Connole v. East St. Louis & S. R. Co., 340 Mo. 690, 102 S.W.2d 581, 590[21]. We think the instruction not subject to this criticism of defendant.

■ Defendant says "there is not a scrap of evidence" authorizing the submitted finding "that it was the practice in said boiler shop to rest such sheets of iron along said edge of said slab while turning them over * * *." We have heretofore stated the evidence favorable to plaintiff bearing on this submission in considering whether a submissible case was made with respect to the use of the anvil. We hold the evidence was sufficient as between master and servant for the submitted finding. O'Donnell v. Baltimore & O. R. Co., 324 Mo. 1097, 26 S.W.2d 929, 933[8]; Young v. Terminal R. Ass'n, Mo.Sup., 192 S.W.2d 402, 404[1]; 25 C.J.S., Customs and Usages, § 9, notes 77–80, p. 84.

■ Is the $10,000 judgment excessive?

Plaintiff was 64 years of age at the time, September 5, 1951. He is right handed. He suffered a compound fracture of the distal and proximal phalanxes of his right great toe. The bony line of separation was irregular and showed fragmentation. The distal phalanx, distal joint and about half of the proximal phalanx were removed. The toe appeared contaminated with foreign material and a rubber drain was inserted. He was given morphine, codine and aspirin. The healing was prolonged by poor circulation, a fungus and a bone infection. The drying and falling away of the skin resulted in dead skin being cut away and the toe dressed on October 2, 5, 12, and 19, 1951. On December 12, 1951, a fungus infection was "slowing healing." The foot was tender and swollen on January 2, 1952. The X-rays show a "little" tit or spur of bone at the tip of the proximal phalanx. An X-ray of January 16, 1952, showed some osteoporosis, a disuse atrophy, and a low grade osteomyelitis. The toe was dressed again on January 28, 1952. On February 23rd the sinus was still draining and was cleaned and dressed. On March 22, 1952, the healing was pronounced complete and plaintiff dismissed. An X-ray of September 11, 1952, showed the osteoporosis had disappeared.

The plaintiff suffered severe pain following the accident and his operation. He made about forty trips to the hospital. He was suffering pain from his toe at the time of trial, March 16, 1953. Dr. Kilian Fritsch, plaintiff's expert medical witness, stated plaintiff's present pain might be the result of the little spur of bone, or a little neuroma, or adherence of the skin to the bone. Plaintiff's toe has caused him to limp, walk on the outside of his foot, and to stumble and fall. He can walk "pretty good on the level" but has difficulty going up and down stairs. Dr. Fritsch testified that the great toe is the take-off toe in walking and important in maintaining a balance while standing and considered equal in value to the other four toes; that the muscles of the leg have to compensate for its loss; that plaintiff had a "fairly good stump" for what he had been through, "it is usable," and he would not suggest any stump revision at this time.

Plaintiff remained at the hospital until September 16, 1951. He was on crutches until December 5, 1951. He lost $1,542.15 in wages. He returned to work January 28, 1952, was working at the time of trial and receiving full pay for his work.

The cited Missouri cases bearing more directly on the issue are: For defendant: Hill v. Terminal R. Ass'n, 358 Mo. 597, 216 S.W.2d 487, 493[6, 7], and a recent opinion of one of the courts of appeals which was withdrawn on other grounds, according to defendant, and not furnished this court. For plaintiff: Killinger v. Kansas City Pub. Serv. Co., Mo.Sup., 259 S.W.2d 391, 398 [12]; Cruce v. Gulf, Mobile & O. R. Co., 361 Mo. 1138, 238 S.W.2d 674, 681; Rapp v. St. Louis Transit Co., 190 Mo. 144, 162, 88 S.W. 865, 869; Dees v. Skrainka Const. Co., 320 Mo. 839, 8 S.W.2d 873, 878[5]; Lonnecker v. Borris, Mo.Sup., 245 S.W.2d 53, 58[10].

We need not develop the authorities cited. However, after a careful study of them and others, giving consideration to the age of the plaintiffs, their earnings, the extent and severity of their injuries, their ability to continue their employment, and other factors for consideration, we conclude the maximum recovery that should be permitted to stand under the evidence favorable to the instant plaintiff is $8,000. If plaintiff will within fifteen days enter a remittitur in the sum of $2,000 the judgment will be affirmed for $8,000 as of the date of the verdict; otherwise it will be reversed and the cause remanded. It is so ordered.

WESTHUES and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the Court.

All concur.