Joe DONALDSON, Respondent,

v.

Ann RATHER, Appellant.

No. 22326.

Kansas City Court of Appeals.

Missouri.

March 7, 1956.

Ilus W. Davis, William J. Burrell, Dietrich, Tyler & Davis, Kansas City, for appellant.

Clyde J. Linde, Robert B. Langworthy, Billy S. Sparks, Kansas City, Langworthy, Matz & Linde, Kansas City, of counsel, for respondent Kelley-Williams Motor Co.

DEW, Presiding Judge.

The plaintiff in this action sued defendant Ann Rather for personal injuries arising out of a wreck of an automobile which she was driving, and in which he was riding. Defendant Rather filed a counterclaim against the plaintiff for personal injuries arising out of the same accident and a cross-claim against the defendant Kelley-Williams Motor Company, employer of the plaintiff. The jury found the issues for the defendant Rather on the plaintiff's petition and in her favor on her counterclaim against the plaintiff, and on her cross-claim against defendant Kelley-Williams Motor Company and assessed her damages at $4,000. The court overruled the motions of the plaintiff and the defendant Kelley-Williams Motor Company for judgment notwithstanding the verdict, but sustained their alternative motions for a new trial, assigning the single ground that the court had erred in giving the defendant Rather's Instructions 8 and 9. Defendant Rather has brought this appeal from that order.

The gist of the plaintiff's petition is that while he was a passenger in an automobile owned and operated by defendant Rather April 5, 1952, he was injured in a wreck of said vehicle when it ran into and collided with a cement wall through the negligence of the defendant Rather in failing to exercise the highest degree of care in that she did not maintain control of the vehicle, did not give proper attention to the manipulation of the controls of the vehicle, stepped on the accelerator instead of on the brake, and in turning a corner at a high and dangerous rate of speed. On mo-

tion of defendant Rather, the Kelley-Williams Motor Company was made a party defendant.

By her answer the defendant Rather admitted the ownership of the automobile described, her presence therein at the time mentioned, and its collision with the cement wall at the place stated. She generally denied the other allegations of the petition. She alleged further that at the time of the accident she "and plaintiff were operating said automobile" southerly near the intersection described and that she was under the instruction of the plaintiff in the operation of the automobile, under his orders, direction and control, and that plaintiff was "in charge" of its "operation"; that the collision was due solely to the negligence of plaintiff in the respects set forth. She alleged that at the time in question the plaintiff was the agent and employee of the defendant Kelley-Williams Motor Company and was acting within the scope and course of his employment. She further alleged that she purchased the automobile from defendant Kelley-Williams Motor Company and that in connection with such purchase that company agreed to teach her to drive; that pursuant to such agreement defendant Rather, at the time of the accident, was in the course of her first lesson of instruction by the plaintiff in behalf of said company; that the injury was caused by the negligence of the plaintiff in failing properly to instruct her to drive the vehicle, allowing the vehicle to run into the cement wall described, and causing her injuries set forth. She also pleaded assumption of risk on the part of the plaintiff and contributory negligence.

The counterclaim of the defendant Rather alleged facts similar to those pleaded in her answer and described the alleged personal injuries for which she asked damages in the sum of $30,000 and for $600 in damages to her car. Plaintiff's reply to the counterclaim admitted the purchase of the automobile by defendant Rather, denied that either he or the Kelley-Williams Motor Company agreed to teach the defendant Rather to drive the car, and alleged that she had driven cars for many years prior to the accident. He admitted his presence in the Ford car at the time of the collision and charged the defendant Rather with contributory negligence.

Defendant Kelley-Williams Motor Company answered the cross-claim of defendant Rather by admitting the sale of the automobile, denying specifically that said defendant had agreed to teach her to drive, alleging that she had driven automobiles many years prior to the accident in question, generally denying all other allegations, and pleading contributory negligence on her part.

According to the plaintiff's evidence, he was at the time of the accident and had for many years been a salesman for the defendant Kelley-Williams Motor Company, dealer in Ford automobiles, at its agency at 8th and McGee streets in Kansas City, Missouri. He received a telephone call from defendant Rather in which she indicated she desired to purchase an automobile. A few days later she appeared at Kelley-Williams Motor Company and talked with William Crooks, truck manager for the company. The plaintiff was at the time temporarily absent from the sales room. Crooks took her for a fifteen minute ride in one of the company's new Ford cars to demonstrate the Fordomatic or automatic transmission. He did all the driving.

The Ford transmission was different from the standard transmission then in vogue in that there was no clutch pedal on the left of the steering post or elsewhere. A lever attached to the steering wheel, when moved by the operator, automatically put the car in or out of gear or in neutral or in either of the two forward speeds or reverse, as indicated. To start the motor the lever was fixed at neutral and the ignition turned on. To start the movement of the car the lever was moved to one or the other of the two forward speeds, or to reverse, as desired. No clutch pedal was used or required in any change from one speed to the other, nor in slowing or starting the car. The foot brake and accelera-

tor were located as in the conventional shifting system.

The plaintiff's evidence further tended to show that after taking defendant Rather for a ride, Crooks sold the car to her that day and she signed the sales contract in the usual form, paying $50 down. Plaintiff returned while she was still at the agency office and Crooks turned the transaction over to plaintiff, who was entitled to the floor sales made on that day. Plaintiff then met and talked with the defendant Rather. She told him that she knew how to drive a car but did not know how to drive the Fordomatic, and that she had not driven any car lately. Crooks told her plaintiff "would show her how to operate the Fordomatic". Plaintiff "agreed to show her how to operate it". In a few days she appeared again and completed her payment. Plaintiff then got in the car with her and he drove the car out to Cliff Drive, a public park. He told her to watch his feet as he stopped or slowed down.

After reaching a point in Cliff Drive the plaintiff stopped the car, "killed" the motor, put on the emergency brake and "put her under the wheel". He took the seat to her right. He testified that he "showed her everything I could, all about it, before I let her start the car, put on the emergency brake and killed the motor". He had her put the car in neutral, start the motor, take off the emergency brake and told her to put it into "drive" and go slow. She drove down the street without any trouble, making several stops. She made the curves in the winding driveways in Cliff Drive all right. Plaintiff kept her to the right-hand side of the street. Plaintiff was asked:

"Q. What I am getting at, Mr. Donaldson, * * * your testimony is that your conversation with her was you were going to teach her how to drive the Fordomatic, is that right? A. Yes, sir.

"Q. That is what you said, And that was in connection with the bargain there that you made? A. Yes, sir. I don't know if I was going to teach her anything, I was going to show her how to operate it, so she could learn.

"Q. You were giving her some instruction, at any rate? A. Yes. * *

"Q. And you were sitting there on the right side so that if she would have any difficulty in handling the car, you could give her some assistance? * * *. A. I suppose that is what I was there for. * * *

"Q. Now you were along * * * you said yesterday, I believe, that you kept her down to ten miles an hour. A. Yes, sir.

"Q. And that you kept her over on the right side of the road out there? A. Yes, sir.

"Q. And you would instruct her as to what to do? A. Yes, sir.

"Q. And she would try to follow your instruction? A. She did.

"Q. And everything that she did was * * * in other words, whether she would turn or slow down or start up, that was in accordance with what instruction you would give her? A. Yes, sir".

The written purchase contract signed by defendant Rather and defendant Kelley-Williams Motor Company contained an itemization of the car and accessories purchased, the prices and certain terms of warranty, but no provisions pertaining to teaching the purchaser to drive the car or to operate the Fordomatic. It did contain the following provision: "The front and back of this order comprise the entire agreement pertaining to this purchase and no other agreement of any kind, verbal understanding or promise whatsoever, will be recognized".

The plaintiff's further evidence was that when the car was going south and was 70 or 80 feet north of where St. John Street from the west dead ends at Cliff Drive, which becomes Wabash Avenue from that point south, plaintiff said to defendant

Rather: "We will make a turn up here and stop". He wanted to get back to the sales room down town as soon as possible and wished to stop the car to determine which course to take to the down town district. There was only one way to turn at the intersection and that was to the right or west on St. John. On the southwest corner there was a residence facing east on Wabash and on a lot with a high terrace along the south side of St. John Avenue. Defendant Rather did not stop. She pushed on the accelerator instead of the brake and proceeded fast to the intersection and failed to make a complete turn to the right at St. John. She traveled diagonally across to the south side of that street, up on the terrace alongside the dwelling, striking the concrete wall on the east side of a driveway which led into the basement of the building, and stopped with the front end resting down in the driveway and the rear up over the retaining wall. Both parties were injured and later removed to the hospital.

Plaintiff had testified in his deposition:

"Q. Have you ever taught anybody how to drive a car in connection with the sale of a car? A. We show lots of people.

"Q. Is that a fairly common practice? * * * A. It was, yes. It was, but Williams stopped it now. * *

"Q. When did he stop that practice? A. Just since I got hurt. Not that I * * * never stopped it until here last month. He told the boys not to give anybody any more instructions, we would hire somebody".

At the trial plaintiff testified that he had not taught any person to drive an automobile except one and that was in the period of the Model T. Ford. The president of the defendant Kelley-Williams Motor Company testified that for many years it had been the custom of the company not to teach purchasers to drive cars, and that the only authority plaintiff had was to demonstrate the Fordomatic shift.

The evidence adduced by the defendant Rather was to the effect that she had driven a car for about six months in 1928 or 1929, when she drove a Plymouth of a 1927 or 1928 model from her grandfather's farm to her home in Nashville, Illinois, three miles distant, once or twice a week for six months. That car had a gear shift lever that came out from the floor and a clutch pedal. She did not attempt to drive thereafter until 1951, when she enrolled for a course of driving at the United Driving School in Kansas City, Missouri. At that time she took one lesson at the Liberty Memorial Mall in a car with standard gear shift and dual controls but because of the icy streets and bad weather the lesson was cut short and she canceled the balance of her course. Later, in 1952, she telephoned defendant Kelley-Williams Motor Company and talked with the plaintiff Donaldson, and stated that she needed a car in the course of her employment; that she would have to have instructions in driving a car, and she was told that the company would take care of her, to come down to the agency the following Saturday. She appeared at that time and bought the car involved in this case. It had a Fordomatic drive or automatic shift. Mr. Crooks, the salesman for the company, took the order and later Mr. Donaldson appeared. She testified that plaintiff made an appointment to teach her the following Tuesday to drive the car. On that day she went to the agency but plaintiff was not present. The next day she talked with plaintiff and he told her that he could not take out her car until she fully paid for it. The following Saturday she appeared, paid the balance due and plaintiff took her out for instructions.

Defendant Rather testified that plaintiff drove her car out to Cliff Drive, telling her to "watch his feet". He stopped in the park and showed her the position of the Fordomatic Drive and had her sit behind the wheel and he sat to her right. He then instructed her to proceed at 10 miles an hour, directed her to keep to the right side of the road and controlled all her actions in the operation of the car. Plaintiff showed her the different positions of the lever to change gears, but she herself did not touch them. Plaintiff reached over

and operated the Fordomatic. After she had driven the car about two blocks. she undertook to stop it at a lamp post but passed it and tried to stop at a second lamp post and stopped short of it. As they approached the intersection of St. John and Cliff Drive, traveling south, and when within 70 or 80 feet of that intersection, plaintiff told her: "We will make a turn up here and stop", or "We're going to make a turn up here but stop". She stopped the car short of the intersection and started up again when plaintiff said: "Let's turn to the right", which she undertook to. do. The car failed to complete the turn and traveled into the intersection and westerly across St. John and diagonally to the left to and upon the terrace of the residence property described, over a retaining wall of a driveway leading to a basement garage. The driveway is about 75 feet west of the intersection. She stated that plaintiff did nothing during this time while the car was making the turn to assist her in the operation of it.

In rebuttal defendant Rather testified that when she was purchasing the car she told the salesman Crooks that she could not drive and he told her that the plaintiff was a wonderful instructor. She testified also that Crooks visited her at the hospital and she remarked that she had a car but was still unable to drive it and he told her: "Well, we will see that you will learn to·drive, so don't worry about that". ·

Since the trial court granted a new trial solely upon the ground that it was error to give Instructions 8 and 9 requested by the defendant Rather, and without further particulars, it is her burden, as appellant, to establish that in every essential respect in which those instructions are here challenged, they were correct. This the defendant Rather purports to do in her brief. If, for any good and sufficient reason assigned by the parties, it was prejudicial error to submit those instructions, or either of them, the action of the court in granting the motions for new trial must be approved.

Condensing Instruction 8 for the purposes at hand, that instruction, after stating the rule of ordinary care for his own safety, as applied to the plaintiff, submitted to the jury the factual issues that defendant Rather purchased the Ford car with the Fordomatic drive from defendant Kelley-Williams Motor Company; that in connection with said purchase the plaintiff told her that he would instruct her in the operation of the car; that at the time of the accident she was receiving such instruction from the plaintiff; that prior thereto she was unskilled and inexperienced in the operation of an automobile; that before allowing her to operate the car from behind the steering wheel plaintiff failed to give her such instructions as a careful and prudent person under the circumstances known to the plaintiff would have done; that "if you further find from the evidence that plaintiff was having difficulty in maintaining control of said automobile at or near the intersection of St. John and Wabash, if so, and if you further find from the evidence, that plaintiff knew, or by the exercise of ordinary care should have known, that defendant Ann Rather was having difficulty in maintaining control of said automobile at or near the intersection of St. John and Wabash, if so, and if you further find that plaintiff thereafter could have manipulated the controls of said automobile, if so, and thereby maintained control of said automobile, if so, and thereby avoided the collision in evidence, if you so find, and that such failure, if any, was negligence", and that such negligence of plaintiff contributed to cause his injuries, then the verdict must be in favor of defendant Rather on plaintiff's petition, even though the jury find that she was negligent as submitted in other instructions.

Instruction 9 read exactly the same as Instruction 8 down to and including the part above quoted, but thereafter submitted to the jury that the negligence of plaintiff, if any, proximately caused the collision and her injuries; that she was not negligent as submitted in other instructions, and instructed the jury that if such facts be so found, the verdict should be in her favor on her counterclaim against the plaintiff, and if he was found to be the

agent and employee of Kelley-Williams Motor Company and acting within the scope of his authority, the verdict should also be in her favor on her cross-claim against defendant Kelley-Williams Motor Company.

Regardless of all other issues it was essential to the plaintiff's cause of action and to defendant Rather's counterclaim that the jury determine who had *such* control of the operation of the car at the time of the accident as would fix the responsibility for the collision. The theory of the plaintiff's petition and proof was that the control of the defendant Rather over the operation of the car was such that she alone was responsible for the collision. The theory of her counterclaim was that the control over the operation of the car by plaintiff was solely the cause of the wreck and her consequent injuries. In fact, the defendant Rather, in her brief, states that "the proof of either cause of action would dispose of the other * *". The court instructed the jury that the verdict could not be in favor of defendant Rather on her cross-claim against defendant Kelley-Williams Motor Company unless the verdict be also in her favor on her claim against the plaintiff Donaldson.

The plaintiff asserts that it was error to submit to the jury the finding in the quoted part of Instruction 8 that "*plaintiff* was having difficulty in maintaining control of the automobile at the intersection of St. John and Wabash", when the evidence was that the car was under the control of the defendant Rather at the same time. Plaintiff points out that such finding would be contradictory of the further finding required in the same instruction that "plaintiff knew * * * defendant Rather was having difficulty in maintaining control of said automobile" at the same time and place.

■ As we have said, it is the burden of the defendant Rather, as appellant, to establish that it was reversible error for the trial court to grant a new trial to the plaintiff and Kelley-Williams Motor Company. McDill v. Terminal R. R. Ass'n of St. Louis, Mo., 268 S.W.2d 823, 828. This necessarily requires her to establish that her Instructions 8 and 9 were without prejudicial error. She has failed in her briefs to take any note whatsoever of the above challenge of those instructions. In the absence of a showing that the error was harmless, we would be justified in our review in assuming the correctness of the court's ruling. Anderson v. Biscoe, Mo. App., 201 S.W.2d 432, 433.

■ We believe the quoted parts of Instructions 8 and 9 are confusing as to the fact and meaning of the control of the automobile at the time and place in question and contradictory of the other findings therein required on the same subject. No distinction therein is made between actual and physical control, which defendant admits she had, and supervisory control over the operation on the part of the plaintiff, on which she relies. An "operator" is "a person who is in actual physical control of a motor vehicle", Section 303.020(8) RSMo 1949, V.A.M.S., as amended, Laws of Mo., 1953, page 569, Section 1, subd. 2 (8).

If it be suggested that the error in Instructions 8 and 9 above discussed, was a mere unintentional substitution of the word "plaintiff" for "defendant", in the parts quoted, and that it was intended to submit that at all times in question the defendant Rather had physical control of the car, but was subjected to the supervisory control by the plaintiff, that supposition would appear to be refuted by the subsequent clause of the instruction that "plaintiff could have manipulated the controls of said automobile, if so, and thereby maintained control of said automobile", etc. To "maintain", according to Webster's International Dictionary, is "to keep possession of; not to surrender or relinquish; to hold or keep in any particular state or condition". This would infer that the plaintiff had both physical and supervisory control of the car at the time and was endeavoring to continue such possession. Furthermore, the hypothesis of a mere accidental use of "plaintiff" for "de-

fendant" in the quoted portion of Instruction 8 is impaired by the fact that the same identification of the parties again appears in the same language in Instruction 9. Also, even if the parties were unintentionally misnamed in the quoted portions of Instructions 8 and 9, that fact does not make the error less confusing to the jury, nor the mistake so obvious that a jury would disregard it. As stated, the subject-matter was of a nature that such a confusion of the parties would be prejudicial.

In view of our foregoing conclusion, and since the evidence on a new trial might determine the other points urged in support of this appeal, it is not necessary to discuss them, nor the additional points made by the other parties to support the ruling of the trial court. The order of the court granting a new trial on the motions of the plaintiff and the defendant Kelley-Williams Motor Company is affirmed.

All concur.